UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Maximilian Josef Rainer Vonnahme,

    Petitioner

v.

Gleydi Danay Mustelier Lugo,

    Respondent

Case No.: 2:22-cv-00707-JAD-NJK

**Order Granting Temporary Restraining Order and Setting Expedited Hearing**

[ECF No. 4]

Petitioner Maximilian Josef Rainer Vonnahme, a German citizen, sues his ex-wife, Gleydi Danay Mustelier Lugo, a German and Cuban dual citizen, under the 1980 Hague Convention on the Civil Aspects of International Child Abduction, the federal International Child Abduction Remedies Act (ICARA), and Nevada's Uniform Child Abduction Prevention Act (UCAPA) for the return of their daughter, **REDACTED** (I.M.V.H.).[1] According to Vonnahme, he and Lugo share custody of the child, but Lugo removed I.M.V.H. from Germany to Nevada without his knowledge or consent and under false pretenses. Vonnahme further believes that Lugo is likely to flee to Cuba because she and I.M.V.H. both have Cuban passports and Cuba isn't a party to the Hague Convention. So he moves on an emergency basis for a warrant to prevent I.M.V.H. from leaving Nevada or the United States.

---

[1] ECF No. 1. Vonnahme filed numerous documents containing personally identifiable information, such as the minor child's name and birthdate, without filing those documents under seal under Local Rule IA 10-5. Out of an abundance of caution, the court has sealed those documents. In the future, Vonnahme should ensure that all documents with sensitive information are properly filed under seal. In addition, Vonnahme must follow all other local rules of this district, including instructions for the format and style of all pleadings and motions. Although, due to the urgency of this matter, I excuse Vonnahme's present noncompliance, any future filings that do not conform to the local rules may be rejected, struck, or denied.

Construing Vonnahme's motion as one for an emergency ex parte temporary restraining order, I grant it and enjoin Lugo from changing the child's place of residence or taking the child outside the State of Nevada without this court's express written authorization, and I order Lugo to surrender I.M.V.H.'s passports to the United States Marshal for safekeeping. Further, I grant Vonnahme's request for an expedited hearing on the merits of his complaint, and schedule it for Tuesday, May 10, 2022, at 1:00 p.m.

## Discussion

### I. Temporary-restraining-order standard

The legal standard for issuing a temporary restraining order (TRO) and the legal standard for preliminary injunctive relief are "substantially identical."[2] Both remedies are "extraordinary" ones "never awarded as of right."[3] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[4] The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[5] Under either approach, the starting point is a merits analysis, but "in deciding a motion for a

---

[2] *See Stuhlbarg Int'l Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the TRO").

[3] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[4] *Id.* at 20.

[5] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact."[6]

## II. Vonnahme satisfies the *Winter* standard for injunctive relief.

Vonnahme has established each of the four prongs necessary for a TRO to issue. And because of the substantial risk that Lugo may flee this jurisdiction with the child, I find it necessary to grant his motion without notice to her. Importantly, I note that at this stage of proceedings, I have not yet determined whether I.M.V.H. should be returned to Vonnahme in Germany. I only conclude that he has satisfied the legal standard necessary for this court to issue a TRO that will preserve the status quo pending an expedited hearing next week. So I temporarily enjoin Lugo from concealing or removing the child from this district until I rule on the merits of Vonnahme's petition.

### A. Likelihood of success on the merits

The Hague Convention is a multilateral international treaty on parental kidnapping to which the United States and Germany—but not Cuba—are signatories.[7] The Convention intends to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence."[8] Its primary objectives are to "secure the prompt return of children wrongfully removed to or retained in any" signatory State and "ensure that rights of custody and of access

---

[6] *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986)

[7] The United States implemented the Convention through the enactment of ICARA, which vests federal district courts with concurrent jurisdiction over claims arising under the Convention and the authority to order the return of wrongfully removed or retained children to their country of habitual residence. 22 U.S.C. §§ 9001–9011.

[8] Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, preamble, T.I.A.S. no. 11670.

under the law of one [signatory] State are effectively respected in the other [signatory] States."[9] But the Convention does not provide for the consideration of custody claims underlying actions for the return of a child.[10] The Convention's protections are only triggered when a child under 16 is removed from her habitual residence in breach of the existing custody rights of the petitioner-parent.[11] To succeed on the merits of a claim for the wrongful removal and retention of the child, Vonnahme must establish that (1) I.M.V.H. was removed or retained from her country of habitual residence; (2) her removal or retention was in breach of Vonnahme's custody rights under German law; and (3) at the time I.M.V.H. was wrongfully removed or retained, he was actually exercising his custody rights.[12]

### 1. Removal or retention of I.M.V.H.

Neither the Convention nor ICARA defines "habitual residence," but the Supreme Court has held that the determination is "not a categorical one" and must be fact specific.[13] "No single fact . . . is dispositive," but in "straightforward" cases, "[w]here a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence" absent countervailing factors, such as coercion.[14] And "[f]or older children capable of acclimating to their surroundings, courts have long considered" additional factors to determine the child's habitual residency, including "a change in geography combined with the passage of an appreciable period of time," "age of the child," "immigration status of child and parent,"

---

[9] *Id.* at art. 1.
[10] *Id.* at art. 19.
[11] *Id.* at art. 3, art. 5.
[12] *Id.* at art. 3.
[13] *Monasky v. Taglieri*, 140 S. Ct. 719, 726–27 (2020).
[14] *Id.*

"academic activities," "social engagements," "participation in sports programs and excursions," "meaningful connections with the people and places in the child's new country," "language proficiency," and "location of personal belongings."[15]

In his complaint, Vonnahme adequately alleges facts that show that I.M.V.H. was removed from Germany, which is her country of habitual residence. According to Vonnahme, I.M.V.H. was born in Cuba in 2013, but before her first birthday, she and Lugo relocated to Germany to reside with Vonnahme.[16] When he and Lugo separated in 2014, both parents split parenting time and acted amicably during family vacations together.[17] In 2015, a Cuban court issued an order establishing each parent's rights with respect to I.M.V.H., and when the couple divorced, they continued to share parenting responsibility and time.[18] I.M.V.H. began school in Germany in 2018 and remained a student there until January 26, 2022, when Lugo without Vonnahme's knowledge or consent asked the school for a ten-day leave of absence to purportedly have I.M.V.H.'s passport validated.[19] Three days later, Lugo messaged Vonnahme via WhatsApp, letting him know that she and the child had arrived safely in Las Vegas, where she intended to look for work.[20] Vonnahme asked Lugo to return to Germany with I.M.V.H., but Lugo refused and ceased communication with him.[21] Vonnahme later learned that, prior to

---

[15] *Id.* at 727 & n.3.
[16] ECF No. 1 at ¶¶ 11–13.
[17] *Id.* at ¶¶ 14–18.
[18] *Id.*
[19] *Id.* at ¶¶ 19, 22–24.
[20] *Id.* at ¶ 24.
[21] *Id.*

5

leaving Germany, Lugo had obtained a tourist visa to the United States, quit her job, and terminated her residential lease.[22]

Vonnahme has thus established that I.M.V.H. was removed from Germany in January and has resided in the United States since then. In her eight years, I.M.V.H. hasn't lived, attended school, or spent extended periods of time in any country other than Germany, so it appears straightforward that her habitual residence is Germany. I conclude that Vonnahme is likely to succeed in establishing the first element of his wrongful-removal claim.

### 2. *Breach of Vonnahme's custody rights*

The second element of the wrongful-removal claim requires Vonnahme to show that I.M.V.H.'s removal to the United States breached his custody rights under German law. According to the complaint, a Cuban court gave both parents joint custody and equal parental authority of the child, and that order was domesticated in a German court.[23] Under German law, contact with both parents is essential to their minor child's welfare, and parents have the duty and the right to care for, raise, and supervise the child, as well as to demand the handover of the child from anyone withholding her from one or both parents.[24] Vonnahme and Lugo, who were married when the child was born, shared custody and parenting time of I.M.V.H. for nearly a decade, and most of that time was while the parties were either separated or divorced.[25] And Vonnahme has sufficiently alleged that he did not consent to his daughter's removal to the United States from Germany[26]—indeed, because he was unaware of Lugo's actions, he couldn't

---

[22] *Id.* at ¶ 1, 25.
[23] *Id.* at ¶¶ 15–16, 28–29.
[24] Bürgerliches Gesetzbuch [BGB] [Civil Code], §§ 1626, 1631–32 (Ger.); *see* ECF No. 1-11.
[25] ECF No. 1 at ¶¶ 1, 14, 17–18.
[26] *Id.* at ¶¶ 22–23, 31.

have consented even if he'd wanted to do so. Vonnahme has demonstrated that the continued retention of I.M.V.H. in this country is violating his joint-custodial rights, so I find that he'll likely succeed in establishing the second element of his wrongful-removal claim.

### 3. *Vonnahme's actual exercise of custody at the time of removal*

The final prong of the wrongful-removal claim's merits analysis requires Vonnahme to show that, at the time I.M.V.H. was removed from Germany, he was actually exercising his rights of custody of her. In the complaint, Vonnahme recounts that he and Lugo switched custody on weekdays and weekends every week.[27] And but for Lugo's mid-week, wrongful removal of I.M.V.H. from Germany, he would have continued to exercise his custody rights. He immediately demanded the child's return, but Lugo refused.[28] And since January, he has diligently pursued every avenue available to regain custody over his daughter, including filing a criminal complaint against Lugo for abduction in Germany, contacting the United States Department of State in an effort to locate I.M.V.H., applying for her return through the Hague, and filing this suit.[29] So I find that Vonnahme has sufficiently established a likelihood of success on his wrongful-removal claim.

### B. **Likelihood of irreparable harm, balance of equities, and the public interest**

Vonnahme alleges in the complaint that both Lugo and I.M.V.H. have Cuban passports, and Lugo's family still resides there.[30] Cuba is not a signatory to the Hague Convention, so should Lugo take I.M.V.H. there, it is unlikely that an action to recover the child from Cuba would succeed. Given Lugo's abrupt actions in removing the child from school and bringing her

---

[27] *Id.* at ¶¶ 14, 17–19.
[28] *Id.* at ¶ 24.
[29] *Id.* at ¶ 7, 34; ECF No. 1-3; ECF No. 1-4.
[30] ECF No. 1 at ¶¶ 26, 37.

to Las Vegas, I find it possible that she would continue to conceal the child and possibly relocate to Cuba. So it is likely that Vonnahme would be irreparably harmed absent injunctive relief that prevents the child's departure from Nevada.

The risk of Lugo secreting away I.M.V.H. to Cuba or elsewhere before the resolution of Vonnahme's claim's merits outweighs any injury to her or the child that may result from ordering the child to stay in Nevada. A TRO at this stage merely maintains the status quo as it existed before this action was filed. And it does not appear from the complaint that a TRO would impose any hardship on Lugo—she chose to move herself and the child to Las Vegas, where someone Lugo knows resides.[31] Thus, the balance of equities tips in Vonnahme's favor.

The public interest provides no impediment to the issuance of injunctive relief either. "The public[-]interest analysis for the issuance of a [TRO] requires [courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief."[32] The Hague Convention's purpose is to prevent one parent from wrongfully and unilaterally removing or retaining her child in another country at the expense of the other parent's custody rights. ICARA provides courts with the responsibility to "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."[33] And under Nevada law, to prevent abduction, courts can order "the respondent [to] surrender . . . any United States or foreign passport issued in the child's name, including a passport issued in the name of both the parent and the child." So I find that the public interest

---

[31] *Id.* at ¶ 24.
[32] *Cottrell*, 632 F.3d at 1138.
[33] 22 U.S.C. § 9004(a).

would be furthered by the issuance of a TRO, not injured by it.  I thus grant in part Vonnahme's motion, enjoin Lugo as set forth below, and set the matter for an expedited merits hearing.

### Conclusion

IT IS THEREFORE ORDERED that Vonnahme's emergency motion for a warrant, which I construe as a temporary-restraining-order motion, **[ECF No. 4] is GRANTED IN PART**:

- The United States Marshal is **DIRECTED TO SERVE** respondent Gleydi Danay Mustelier Lugo, located at 4325 S. Bruce Street, Apt. 50, Las Vegas, Nevada 89119, with this order, the complaint [ECF No. 1], the summons [ECF No. 1-2], and the emergency motion [ECF No. 4].

- Lugo, her agents, and all others acting in concert with her, are **HEREBY ENJOINED** from taking the child ( REDACTED I.M.V.H.) or allowing the child to be taken outside the State of Nevada without express written authorization from this court.  **The court will not hesitate to order the arrest of any person who violates this injunction**.

- Lugo, her agents, and all others acting in concert with her are **FURTHER ENJOINED** from concealing I.M.V.H. or changing the child's physical place of residence without express written authorization from this court.

- Lugo must deliver to the United States Marshal, for safekeeping, any and all passports for I.M.V.H. that are in respondent's possession, custody, or control, including any issued in both Lugo and the child's names, along with a copy of this order **by 4:30 p.m. on Tuesday, May 10, 2022**.  The United States Marshal's office is located at **Suite 2058 on the second floor of the Lloyd D. George United States**

**Courthouse, 333 South Las Vegas Blvd, Las Vegas, Nevada, 89101**. Lugo must further notify the United States Marshal if she knows of any person having possession of such a passport. The United States Marshal is authorized to receive and to hold any such passport pending further instructions from this court.

- **This injunction will expire at 5:00 p.m. on Tuesday, May 10, 2022, unless extended for good cause**.

IT IS FURTHER ORDERED that Vonnahme's request for an expedited merits hearing **[ECF No. 1] is GRANTED**. The hearing is scheduled for **Tuesday, May 10, 2022, at 1:00 p.m. in Courtroom 6D of the Lloyd D. George United States Courthouse, located at 333 South Las Vegas Blvd, Las Vegas, Nevada, 89101, before Judge Jennifer A. Dorsey**. At that time, the court will hear any arguments for extending, modifying, or dissolving this injunction. Any written submissions should be filed with the clerk and electronically served **no later than 4:00 p.m. on Monday, May 9, 2022**.

IT IS FURTHER ORDERED that **the Clerk of Court is directed to provide the United States Marshal with a copy of the complaint [ECF No. 1], all exhibits attached thereto, the emergency motion [ECF No. 4], and this order**.

                                                                  _____
U.S. District Judge Jennifer A. Dorsey
May 5, 2022